UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MICHAEL PAUL EVANS,

                Petitioner,

   v.

RENEE BAKER, *et al.*,

             Respondents.

Case No. 3:17-cv-00347-MMD-WGC

ORDER

## I. SUMMARY

Before the Court for a decision on the merits is a petition for a writ of habeas corpus filed by Michael Paul Evans, who is incarcerated in the Nevada Department of Corrections. (ECF No. 5.) For reasons that follow, the petition will be denied.

## II. BACKGROUND

On September 6, 2013, Evans signed a memorandum of plea negotiation in which he agreed to enter a guilty plea to second-degree murder in the First Judicial District Court for Nevada. (ECF No. 17-9.) Undisputed facts underlying the crime include the following.[1] On or between April 2 and April 4, 2013, Evans gained entry into William McCune's apartment in Carson City, Nevada, with the intent to rob McCune. Evans' co-defendants, Anthony Elliott and Raul Garcia, entered the apartment shortly thereafter. The three men began beating McCune, bound his hands and feet when he struggled, and continued to beat him. McCune died as a result of the beating. The following day, the men returned to

---

[1]These facts are gleaned from Evans' petition (ECF No. 5 at 3–5) and Respondents' answer (ECF No. 31 at 2).

1   the apartment and used McCune's car to transport his body to the Carson River, where

2   they disposed of it.[2]

3       Evans entered his guilty plea in court on September 9, 2013. (ECF No. 17-9.) Under

4   the terms of the plea agreement, both parties agreed to recommend a sentence of life in

5   prison with parole eligibility beginning when a minimum of ten years had been served. (*Id.*

6   at 2.)

7       After a sentencing hearing, the state district court entered a judgment of conviction

8   on December 19, 2013, which found Evans guilty of one count of second-degree murder

9   and sentenced him to life in prison with parole eligibility after serving ten years. (ECF No.

10  17-23.) Evans did not file a direct appeal.

11      On April 16, 2014, Evans filed, *pro se*, a post-conviction petition for a writ of habeas

12  corpus in the state district court. (ECF No. 18-8.) With the assistance of court-appointed

13  counsel, he filed a supplemental petition on November 4, 2014. (ECF No. 18-13.) The

14  court held an evidentiary on December 1 and 2, 2015, then entered an order denying the

15  petition on December 16, 2015. (ECF Nos. 19-4 and 19-7.) Evans appealed. (ECF No.

16  19-9.) The Nevada Court of Appeals affirmed the lower court's decision, and the Nevada

17  Supreme Court issued a remittitur on March 21, 2017. (ECF Nos. 19-28 and 19-29.)

18      Evans mailed his federal habeas petition to this Court on May 31, 2017. (ECF No.

19  5 at 1.) In response to the petition, Respondents filed a motion to dismiss. (ECF No. 14.)

20  This Court granted the motion and dismissed Ground 2(c) (excessive sentence) and

21  Ground 3(b) (denial of belated appeal) as procedurally defaulted. (ECF No. 27.) The Court

22  also denied Petitioner's ineffective assistance of counsel claims in Ground 1(a) and

23  Ground 4 on the merits. (*Id.*)

24  ///

25  ///

26

27  _____

28      [2]A fourth defendant, Makyla Blackmore, was also charged in connection with the robbery and murder of McCune, but apparently did not enter the apartment (waiting outside instead) or assist in disposing of the body. (ECF Nos. 16-25, 18-28 at 47-48.)

# III.    STANDARD OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law (that is, applies a rule that contradicts governing Supreme Court precedent) or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-6 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because de novo review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## IV. DISCUSSION

The remaining claims before the Court are all premised on allegations that Evans was deprived of his constitutional right to effective assistance of counsel. To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show: 1) that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) that it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). To demonstrate ineffective assistance of

4

counsel in the context of a challenge to a guilty plea, a petitioner must show both that counsel's advice fell below an objective standard of reasonableness as well as a "reasonable probability" that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (holding that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel).

## A. Ground 1(b)

In Ground 1(b),[3] Evans alleges he received ineffective assistance of counsel because counsel coerced him into a plea agreement that included a stipulation to a life sentence and was against his best interests. Evans points out that Elliott and Garcia received a maximum sentence of 50 years even though they played a larger role in killing McCune. He also notes that he was under the influence of methamphetamine when he committed the crime, which could have been asserted as a defense, and that, unlike Garcia and Elliott who fled to Las Vegas using McCune's credit cards, he voluntarily assisted the police by confessing and showing them the location of McCune's body.

In deciding Evans' post-conviction appeal, the Nevada Court of Appeals cited *Strickland* and *Hill* as the federal law standards for adjudicating ineffective assistance of counsel ("IAC") claims in guilty plea cases. (ECF No. 19-28 at 2.) With respect to the claim that is presented to this court as Ground 1(b), the court stated as follows:

> Evans argued his counsel were ineffective for rushing him into accepting a plea offer to second-degree murder without permitting him time to consider whether a stipulation to a sentence of life with the possibility of parole in ten years was in his best interests. Evans failed to demonstrate his attorneys' performances were deficient or resulting prejudice.

> At the evidentiary hearing, Evans' counsel both testified they advised Evans to accept the plea offer because they believed the State would produce overwhelming evidence of Evans' guilt for first-degree murder had Evans proceeded to trial. Evans' counsel also testified they advised Evans to accept the plea offer because, at that time, the State was considering seeking the death penalty and Evans would avoid the death penalty by accepting the plea offer. The district court concluded counsel acted in a

---

[3]Evans' petition contains multiple claims within each of Grounds 1, 2, and 3. In their motion to dismiss, Respondents took the liberty of denominating each of these claims with a lower-case letter (ECF No. 14 at 2), which the Court has adopted for ease of reference.

> reasonable diligent manner and substantial evidence supports the district court's conclusion.
>
> Considering the potential penalties Evans faced had he rejected the plea offer and the significant evidence of his guilt, including his confession, Evans failed to demonstrate a reasonable probability he would have refused to plead guilty and would have insisted on proceeding to trial had counsel performed different actions with respect to the plea offer. Therefore, we conclude the district court did not err in denying this claim.

(*Id.* at 3.)

Reviewed under § 2254(d), the state court's adjudication of the claim did not "result[] in a decision that was contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor did it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The state court applied the correct federal law standards and did so in a reasonable manner. As set forth in his own petition, Evans admitted to the police that he participated in a plan to enter McCune's apartment and take his property in order to buy drugs. (ECF Nos. 5 at 3-4, 18-28 at 33-67.) He further admitted to participating in the beating of McCune (albeit to a lesser extent than Elliott and Garcia), taking property out of McCune's apartment, and returning the following day to dispose of McCune's body. (*Id.*) Evans was initially charged with: (1) open murder upon a person over the age of 60 years and (2) burglary. (ECF No. 15-4.) The criminal complaint was subsequently amended to charge him with: (1) conspiracy to commit burglary and/or robbery, (2) burglary, (3) robbery upon a person over the age of 60 years, (4) first degree murder committed in the perpetration of a burglary/and or robbery (*i.e.*, felony murder) upon a person over the age 60 years, and (5) possession of a credit card without the consent of the cardholder. (ECF No. 16-25.)

At the state post-conviction evidentiary hearing, Evans' lead counsel, Dennis Widdis, testified that, in light of the strength of the State's case regarding Evans' guilt, he focused on developing evidence to mitigate punishment, which included the possibility of the death penalty. (ECF No. 19-4 at 30-31.) In that vein, he obtained a certificate of

materiality and subpoenas to delve into the victim's background, which apparently included predatory sexual misconduct aimed at young or vulnerable people. (*Id.* at 31-33.) He also testified that he reviewed "every page" of several hundred pages of discovery and had his assistant do the same. (*Id.* at 41.) Widdis felt the most advantageous approach was for Evans "to be first in line" to negotiate a plea using Evans' willingness to testify against his co-defendants as leverage. (*Id.* at 41-42.) He also testified that, given the certainty of the defendants' guilt under the felony murder rule, it was hard for him to imagine at the time that any of them (except perhaps Blackmore) would get less than life with parole eligibility after 20 years.[4] (*Id.* at 42-43.) Accordingly, he focused on getting "the bottom number reduced to 10 from 20," which meant getting the murder charge reduced to second degree and getting all the other charges and enhancements dismissed.[5] (*Id.* at 11, 41, 43-44.)

Evans' secondary counsel, Kay Armstrong, also testified at the hearing. (*Id.* at 103–44.) According to her testimony, she was confident that the death penalty could be avoided but felt the State was in "good position" to prove first degree murder. (*Id.* at 114-15.) She also testified that Widdis was very careful about making sure that Evans understood the terms of the plea agreement and that the decision to accept the plea offer was not "an instant decision," but instead involved "very serious considerations." (*Id.* at 118.)

As for the actual negotiations that led to Evans' plea agreement, Widdis testified that the district attorney insisted upon a stipulation to a life sentence as a condition for reducing the charge to second degree murder. (*Id.* at 43-45.) Both Widdis and Armstrong testified that the guilty plea agreement was explained to Evans and that Evans understood

---

[4]Death penalty aside, the possible punishments for first degree murder in Nevada are life without possibility of parole, life with possibility of parole after a minimum of 20 years, and a definite term of 50 years with possibility of parole after a minimum of 20 years. *See* NRS § 200.030(4).

[5]The possible punishments for second degree murder are life with possibility of parole after a minimum of ten years and a definite term of 25 years with possibility of parole after a minimum of ten years. *See* NRS § 200.030(5).

that he was stipulating to a life sentence with eligibility for parole after ten years. (*Id.* at 51-53, 106-08.)

In light of the foregoing, this Court concludes that Evans' counsel provided sound advice based on their competent investigation of the facts of his case. Counsel cannot be faulted for not anticipating that Garcia and Elliott would subsequently avoid a life sentence (receiving instead a definite term of 50 years with parole eligibility after 20 years) despite pleading guilty to the more serious charge of first-degree murder. *See Premo v. Moore*, 562 U.S. 115, 124-25 (2011) (noting that the vagaries of plea bargaining "make strict adherence" to the latitude the *Strickland* standard requires "all the more essential when reviewing the choices an attorney made at the plea bargain stage"). With the district attorney refusing to offer less than a life sentence on the top end, counsel focused on obtaining the lowest possible minimum sentence for Evans based on their reasonable assessment that he would almost certainly be convicted of enhanced[6] first degree murder and receive a harsher sentence if he proceeded to trial on the charges against him. Evans had admitted to facts that satisfied the elements of first-degree murder under the felony murder rule, and a defense premised on his voluntary intoxication would not have been successful given that the underlying felony of robbery is not a specific intent crime. *See Daniels v. State*, 956 P.2d 111, 116 (1998) (holding that the defendant's "claimed incapacity to form specific intent [due to voluntary intoxication] would not shield him from culpability for robbery and concomitant culpability for first-degree murder under the felony murder rule").

In summary, Evans has not demonstrated that counsel's performance fell below an objective standard of reasonableness. In addition, he has not shown a "reasonable

---

[6]Nevada law imposes a mandatory additional consecutive term of one to 20 years for the murder of a person 60 years of age or older. *See* NRS § 193.167.

8

probability" that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.[7]

Ground 1(b) is denied.

## B.    Ground 2(a)

In Ground 2(a), Evans alleges he received ineffective assistance of counsel because counsel failed to argue for or present mitigating evidence in support of the lesser available sentence for second degree murder—*i.e.*, 25 years with parole eligibility after ten years. Evans alleges that Armstrong was aware at the time of sentencing that Garcia and Elliott had entered plea bargains for a term of 50 years yet failed to "rectify the stipulation to a life prison term for Mr. Evans." (ECF No. 5 at 26.)

The Nevada Court of Appeals addressed this claim as follows:

> Evans argued his counsel were ineffective for failing to investigate mitigation evidence to present at the sentencing hearing. Evans failed to demonstrate his attorneys' performances were deficient or resulting prejudice. At the evidentiary hearing, counsel testified they worked with a mitigation specialist who investigated and obtained evidence in preparation for a potential death penalty hearing. Following Evans' guilty plea to second-degree murder, counsel filed a sentencing memorandum to provide the district court with the pertinent information regarding Evans' background for its consideration at the sentencing hearing. The district court concluded these were the actions of objectively reasonable counsel and substantial evidence supports that conclusion. Evans did not demonstrate counsel could have discovered additional favorable evidence through reasonably diligent investigation. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). Further, as Evans received the sentence he stipulated to in the guilty plea agreement, he failed to demonstrate a reasonable probability of a different outcome had counsel investigated and presented additional mitigation evidence at the sentencing hearing. Therefore, we conclude the district court did not err in denying this claim.

(ECF No. 19-28 at 4.)

Counsel Armstrong's testimony at the post-conviction evidentiary hearing establishes that a mitigation expert assembled mitigating evidence and that, but for the plea agreement stipulating to a life sentence, Armstrong would have presented a case for the 10 to 25-year sentence. (ECF No. 19-4 at 110, 121-23.) Notwithstanding the stipulated

---

[7]On this point, the Court notes that all of Evans' co-defendants also entered guilty pleas. (ECF No. 19-18 at 12-13.)

sentence, Armstrong filed a sentencing memorandum before the sentencing hearing that outlined mitigating factors that supported leniency for Evans. (ECF No. 17-21.) She testified that she did so in an effort to "influence" the judge to impose the lesser sentence without breaching the plea agreement. (ECF No. 19-4 at 107-8, 120-22.) She also testified that, even after discovering some of the negative consequences of Evans receiving a life sentence, she did not consider moving to withdraw the guilty plea because she believed the plea agreement to be a "good negotiation." (*Id.* at 123-24.) In addition, Widdis and Armstrong's testimony refutes any claim by Evans that counsel did not explain to him that the plea agreement stipulated to a life sentence (*Id.* at 51-53, 106-08.)

Evans' claim that counsel was ineffective in failing to present a case in mitigation fails to adequately recognize the *quid pro quo* at the heart of the plea negotiations in his case—a stipulation to a life sentence in exchange for the lesser charge with the benefit of parole eligibility in only 10 years (compared to 20 years for his co-defendants). A more aggressive push by counsel for the lesser sentence at the sentencing hearing would have violated the plea agreement, which undoubtedly would have brought a strong objection from the State. And, there is very little, if any, likelihood the sentencing court would have deviated from the plea agreement by limiting the maximum term to 25 years (half that received by Evans' co-defendants) while also allowing the earlier parole eligibility. (ECF No. 17-22 at 14-15.)

Here again, the state court's adjudication of the claim did not "result[] in a decision that was contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor did it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)

Ground 2(a) is denied.

///

///

///

### C.     Ground 2(b)

Ground 2(b) is a claim that counsel were ineffective by stipulating to the harsher of the two sentences for second degree murder. For reasons discussed above in relation to Ground 1(b), this claim lacks merit and is denied.

### D.     Ground 3(a)

In Ground 3(a), Evans alleges counsel was ineffective in failing to perfect an appeal on his behalf and argue appellate issues to the Nevada Supreme Court. His allegations in support of this ground do not claim that he ever instructed his counsel to file an appeal. He appears to claim, however, that counsel should have recognized that he was dissatisfied with his sentence and, as such, should have filed an appeal on his behalf.

The Nevada Court of Appeals addressed this claim as follows:

> Evans argued his counsel were ineffective for failing to pursue a direct appeal. Evans failed to demonstrate his attorneys' performances were deficient. "[T]rial counsel has a constitutional duty to file a direct appeal in two circumstances: when requested to do so and when the defendant expresses dissatisfaction with his conviction." *Toston v. State*, 127 Nev. 971, 978, 267 P.3d 795, 800 (2011). At the evidentiary hearing, Evans' counsel testified they explained to Evans they had 30 days to file a notice of appeal, but Evans did not request to pursue a direct appeal. Evans also testified that he did not request his counsel to file a notice of appeal. The district court concluded Evans did not otherwise express the type of dissatisfaction with his conviction that would have required counsel to file a notice of appeal. *See id.* at 979, 267 P.3d at 801 (explaining the defendant has the burden to indicate his desire to pursue a direct appeal). Our review of the record reveals the district court's factual findings are supported by substantial evidence. Therefore, we conclude the district court did not err in denying this claim.

(ECF No. 19-28 at 5.)

In relying on *Toston*, the state court did not necessarily apply a standard that was contrary to federal law, but it perhaps over-simplified the federal standard. It is true that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal" is performing below the *Strickland* standard. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). However, when a defendant has not clearly conveyed his wishes about an appeal (as in this case), counsel must "consult with the defendant about an appeal when there is reason to think either (1) a rational defendant would want to appeal (for example, because

there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.

The Court in *Flores-Ortega* further explained as follows:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

*Id.*

As discussed above, Evans received the sentence that was bargained for under his plea agreement. In addition, the plea agreement included notice that, by entering a guilty plea, he was waiving his right to appeal his conviction "unless the appeal is based upon reasonable constitutional, jurisdictional or other grounds that challenge the legality of the proceeding . . .." (ECF No. 17-9 at 6.) Evans does not identify, nor can the Court discern, a nonfrivolous issue Evans could have raised on appeal.

In addition, the record establishes that Evans was notified of his appeal rights, a fact he does not deny. (*Id.*; ECF No. 19-4 at 62-63, 109.) Even so, there is no "evidence that he sufficiently demonstrated to counsel his interest in an appeal." *Flores-Ortega*, 528 U.S. at 486. Indeed, his testimony at the state post-conviction hearing indicates that, immediately following sentencing, he did not see any point to filing an appeal. (ECF No. 19-4 at 76-77.) And, he does not allege in his petition that he ever expressed or demonstrated to counsel any interest in filing an appeal. (ECF No. 5 at 33-43.)

Because Evans cannot show that his counsel's performance was below constitutional standards under *Strickland*/*Flores-Ortega*, Ground 3(b) is denied.

## V.     CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for

suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *See id.*

Having reviewed its determinations and rulings in adjudicating Evans' petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Evans' habeas claims.

## VI. CONCLUSION

It is therefore ordered that Petitioner's petition for writ of habeas corpus (ECF No. 5) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 26th day of July 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE